## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTER DIVISION

| | | |
|---|---|---|
| ADELA J. CARRASCO, ERIC J. RAYA, KIERA T. MARTINEZ, ALEXANDER G. FLORES, ANNABEL LEIJA, BENJAMIN M. ONATE, MARIANNA C. PEREZ, individually and as the representative of minors S.O., L.O., J.F., J.C., and I.F., and MARLENI BRACCAMONTES, individually and as representative of minor J.R., | ) ) ) ) ) ) ) ) ) ) | Case No.<br><br>JURY TRIAL DEMANDED |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) | |
| CITY OF JOLIET; Joliet Police Officers A. ADAMS (Star No. 290), LAWRENCE BROOKS (Star No. 229), MICHAEL CAGLE (Star No. 129), FLOR DEL RIO (Star No. 210), PHILIP EMPH (Star No. 122), MICHAEL GEORGANTAS (Star No. 315), RAYMOND JANSMA (Star No. 167), PATRICK KELLY (Star No. 125), TIZOC LANDEROS (Star No. 88), BRADLEY MCKEON (Star No. 296), Sgt. MOORE (Star No. 43), RACHEL SMITHBERG (Star No. 320), RICHARD STYGAR (Star No. 61), and MARCUS WIETTING (Star No. 245); COUNTY OF WILL; Will County Sherriff's Officers STEVEN ADENT (Star No. 2465), RUSS BURROUGHS (Star No. 2368), MICHAEL JANOVYAK (Star No. 2136), PAUL ROJEK (Star No. 1962), and TODD WITTMAYER (Star No. 2112); and U.S. Marshals Service Deputies DOMINIC DILUIGI and JUSTIN MCCLOUD, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants*. | ) ) | |

## COMPLAINT

Plaintiffs, ADELA J. CARRASCO, ERIC J. RAYA, KIERA T. MARTINEZ,

ALEXANDER G. FLORES, ANNABEL LEIJA, BENJAMIN M. ONATE, MARIANNA C.

PEREZ, individually and as representative of minors S.O., L.O., J.F., J.C., and I.F., and

MARLENI BRACCAMONTES, individually and as representative of J.R., by their undersigned

attorneys, for their complaint against current or former Joliet Police Officers A. ADAMS,

LAWRENCE BROOKS, MICHAEL CAGLE, FLOR DEL RIO, PHILIP EMPH, MICHAEL

GEORGANTAS, RAYMOND JANSMA, PATRICK KELLY, TIZOC LANDEROS,

BRADLEY MCKEON, Sgt. MOORE, RACHEL SMITHBERG, RICHARD STYGAR,

MARCUS WIETTING, and the CITY OF JOLIET; current or former Will County Sherriff's

Officers STEVEN ADENT, RUSS BURROUGHS, MICHAEL JANOVYAK, PAUL ROJEK,

TODD WITTMAYER, and the COUNTY OF WILL; and current or former Deputy U.S.

Marshals DOMINIC DILUIGI and JUSTIN MCCLOUD, allege as follows:

## INTRODUCTION

1.      In the early morning, pre-dawn hours of November 2, 2021, Plaintiffs were fast

asleep in the privacy and comfort of their adjacent-but-separate homes at 226 and 228 South

Comstock Street in Joliet, Illinois, when a cavalcade of nearly thirty law enforcement officers of

the Joliet Police Department, Will County Sherriff's Office, and U.S. Marshals Service banged

on the front door to 228 South Comstock. The officers shouted that they had an arrest warrant for

an "Elliot Reyes." When disabled, 62-year-old Plaintiff Adela J. Carrasco made it to the front

door, she informed the officers that she did not know an "Elliot Reyes" and that no "Elliot

Reyes" lived at 228 South Comstock. But Defendants shouted that they were going to break

down the door if it was not opened immediately. Ms. Carrasco opened the door to find more than

twelve rifles and handguns pointed directly at her chest and face. Though she clearly posed no

threat whatsoever to officers, the officers continued pointing their firearms at her in sustained

fashion.

2.      But the officers didn't have an arrest warrant for "Elliot Reyes," and the address listed on the arrest warrant that they *did* have was not 228 South Comstock. Rather, Defendants had a warrant to arrest an "Elian J. Raya," and the warrant stated that Elian lived at *226* South Comstock.

3.      And Defendants knew all of this. First, while 226 and 228 South Comstock were located in the same building, it was clear as day to anyone that the residences were entirely separate. Not only did each residence have a separate address, but each residence also had its own separate front entrance. Each residence also had its own separate rear entrance. Each residence also had its own separate doorbell. The wall next to the front door to 226 South Comstock also was marked by a visible, prominent sign that read "226." The wall next to the front door to 228 South Comstock was marked by a visible, prominent sign that read "228." There also were two separate gas meters located on the outside of the building providing service to each residence. Each residence was billed separately for electricity. In short, the fact that 226 and 228 were entirely separate residences was *unmistakable*.

4.      Second, on information and belief, Defendants were using the arrest warrant for Elian J. Raya in 226 as a false pretext to search 228. In the wake of the tragic shooting death of two, 22-year-old individuals at an outdoor Halloween party two days earlier, Defendants faced enormous, mounting, public pressure to make an arrest for the crime. With no investigative leads, Defendant Joliet Police Detective Raymond Jansma revived a never-executed, 77-day-old warrant for the arrest of Elian J. Raya, an 18-year-old boy, which he had previously obtained merely in order to show police activity following a citizen complaint but never executed because neither he nor any other JPD officer believed Elian had actually committed the crime alleged in the citizen complaint, and no evidence existed that suggested otherwise. But, on a hunch, Jansma

did wonder whether Elian's older brother, Eric J. Raya, who lived at 228 South Comstock, might be connected to the Halloween shooting because Jansma suspected Raya *might* be affiliated with a local a gang.

5.      So motivated, officers descended upon the 226 and 228 residences on South Comstock at or about 6:25 a.m., where they unlawfully forced entry to 228 South Comstock without a warrant, consent, or any exigency; for no justifiable reason pointed guns directly at Plaintiffs, including 10-. 12, 13-, 14-, and 16-year-old children, at point blank range even though Plaintiffs visibly were unarmed, nonthreatening, nonresistant, and fully compliant; unlawfully searched 228 without a warrant, consent, or any exigency, flipping mattresses, pulling clothes out of drawers, and cutting open couch cushions, among other things; and then seized all of the Plaintiffs who were in 228 South Comstock and brought them into 226 South Comstock around 6:50 a.m. where they detained them in the front living/dining room as they then sought to arrest Elian. After officers swiftly found and arrested Elian J. Raya in the basement of 226 South Comstock, Elian was escorted out of the residence by about 6:40 a.m.

6.      But that was not the end of the ordeal for Plaintiffs; in fact, it was just the beginning. *After* Defendants had accomplished their purported purpose of arresting Elian, Defendants did not release Plaintiffs but rather detained them—both those who lived in 228 and those who lived in 226—in the 226 living/dining room for nearly six hours. At no time did any Defendant believe any Plaintiff had committed or was about to commit any crime. Instead, Defendants claimed to have seen a gun lying on the floor next to Elian when they arrested him. There is no doubt the gun was there, but it is unclear how it got there, particularly given that subsequent testing found no fingerprints on it—let alone Elian's. Rather than simply seize the

gun, as authorized under the plain-view doctrine, Defendants told Plaintiffs they were being detained to allow Defendants to get a warrant to search the entire home.

7.     But that's not what Defendants actually did. Instead of immediately seeking a search warrant, several Defendants transported Elian from 226 South Comstock to the Joliet Police station, where they booked and fingerprinted him and proceeded to interrogate him for over an hour, all as Plaintiffs sat imprisoned in the living room of 226 South Comstock under the constant watch of gun-wielding JPD officers who refused their every reasonable request (e.g., to get Ms. Carrasco's asthma inhaler from 228, to put on clothes, to use the bathroom, etc.). Only when Elian, in the interrogation room at JPD station, invoked his Fifth Amendment right as a U.S. citizen to speak with an attorney did Defendants, including Jansma, cease the interrogation and commence efforts to apply for and obtain a search warrant. With a search warrant finally in hand, Jansma returned to 226 South Comstock around 11:45 a.m., where JPD officers executed the warrant but found nothing.

8.     Plaintiffs were released from the 226 living/dining room around 1:00 p.m.

9.     Later that month, three separate individuals were arrested and charged with the Halloween Party Shooting murders. Their criminal case remains pending.

10.     Being awakened by scores of officers pointing rifles directly in their faces at point blank range was a traumatic ordeal for Plaintiffs, especially the children. They still can hear the sound of Defendants shouting at them to "PUT YOUR FUCKING HANDS UP!" and calling them "MOTHER FUCKERS!" as they escorted them, at gun point, out of their bedrooms even though they had done nothing wrong, were nonthreatening, and were at all times compliant. Plaintiffs still have nightmares about the terror of their near-six-hour detention inside 226 South

Comstock. They still remember returning to 228 to find their couch cushions gutted, the interiors removed.

11.    Plaintiffs now seek justice for Defendants' egregious violations of their constitutional rights and redress for the injuries, including psychological pain and suffering and severe emotional distress, that Plaintiffs have suffered and continue to suffer as a result of Defendants' misconduct.

## JURISDICTION AND VENUE

12.    This action is brought pursuant to 42 U.S.C. § 1983 *et seq.* and Illinois law to redress Defendants' tortious conduct and Defendants' deprivation of Plaintiffs' rights secured by the United States Constitution and Illinois law.

13.    This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state-law claims pursuant to 28 U.S.C. § 1367.

14.    Venue is proper under 28 U.S.C. § 1391(b), because the parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

15.    Plaintiffs Adela J. Carrasco, a 63-year-old woman, J.F., a 14-year-old child, L.O., a 15-year-old child, S.O., a 16-year-old child, Alexander G. Flores, a 22-year-old male, Annabel Leija, a 22-year-old female, Kiera T. Martinez, a 22-year-old female, and Eric J. Raya, a 25-year-old male (collectively the "228 Plaintiffs"), are citizens of the United States who, at all times relevant herein, including on November 2, 2021, lived at 228 South Comstock Street in Joliet, Illinois. Plaintiff Adela J. Carrasco is the grandmother of Plaintiffs J.F., L.O., S.O., Alexander G. Flores, and Eric J. Raya. Plaintiffs Annabel Leija and Kiera T. Martinez are the

long-term girlfriends and mothers of the children of Plaintiffs Alexander G. Flores and Eric J. Raya, respectively. On November 2, 2021, Plaintiffs Adela J. Carrasco, J.F., L.O., S.O., Alexander G. Flores, Annabel Leija, Kiera T. Martinez, and Eric J. Raya were 61, 12, 13, 14, 20, 20, 20, and 23 years old, respectively. Also on November 2, 2021, Plaintiff Adela J. Carrasco had COPD, was an asthmatic, and required a cane to walk due to a major hip injury.

16.    Plaintiffs Marianna C. Perez, a 44-year-old woman, Marleni Braccamontes, an 20-year-old female, Benjamin M. Onate, an 18-year-old male, J.C., a 15-year-old child, I.F., a 12-year-old child, and J.R., a 2-year-old infant (collectively the "226 Plaintiffs"), are citizens of the United States who, at all times relevant herein, including on November 2, 2021, lived at 226 South Comstock Street in Joliet, Illinois. Plaintiff Marianna C. Perez is the biological mother of Plaintiff Benjamin M. Onate and the legal guardian of Plaintiffs J.C. and I.F. Plaintiff Marleni Broccamontes is the biological mother of Plaintiff J.R. and the long-term girlfriend of Elian J. Raya. On November 2, 2021, Plaintiffs Marianna C. Perez, Marleni Braccamontes, Benjamin M. Onate, J.C., I.F., and J.R. were 42, 18, 16, 13, 10, and 10 months old, respectively.

17.    Defendants A. Adams (Star No. 290), Lawrence Brooks (Star No. 229), Michael Cagle (Star No. 129), Flor Del Rio (Star No. 210), Philip Emph (Star No. 122), Michael Georgantas (Star No. 315), Raymond Jansma (Star No. 167), Patrick Kelly (Star No. 125), Tizoc Landeros (Star No. 88), Bradley McKeon (Star No. 296), Sgt. Moore (Star No. 43), Rachel Smithberg (Star No. 320), Richard Stygar (Star No. 61), and Marcus Wietting (Star No. 245) (collectively, the "JPD Defendants") are current or former officers and employees of the Joliet Police Department and the City of Joliet. At all times relevant to the events described in this Complaint, Defendants Landeros, Jansma, Stygar, and/or Moore were sergeants and/or

supervisors in the Joliet Police Department and in that capacity directed, approved, and ratified the decisions of the other Defendants named in this Complaint.

18.     Defendant City of Joliet is an Illinois municipal corporation that is or was the employer of the above-identified JPD Defendants. In addition, on November 2, 2021, each of the JPD Defendants named in this Complaint was acting as an employee or agent of the City of Joliet. The City of Joliet is liable for all torts committed by the JPD Defendants pursuant to the doctrine of *respondeat superior*.

19.     Defendants Steven Adent (Star No. 2465), Russ Burroughs (Star No. 2368), Michael Janovyak (Star No. 2136), Paul Rojek (Star No. 1962), and Todd Wittmayer (Star No. 2112) (collectively, the "WCSO Defendants") are current or formers officers and employees of the Will County Sheriff's Office and the County of Will. At all times relevant to the events described in this Complaint, Defendants Rojek and Wittmayer were sergeants and/or supervisors in the Will County Sheriff's Office and in that capacity, directed, approved, and ratified the decisions of the other Defendants named in this Complaint.

20.     Defendant County of Will is an Illinois municipal corporation that is or was the employer of the above-identified WCSO Defendants.

21.     On November 2, 2021, each of the WCSO Defendants named in this Complaint was acting as an employee or agent of the County of Will. The County of Will is liable for all torts committed by the WCSO Defendants pursuant to the doctrine of *respondeat superior*.

22.     In the alternative, on November 2, 2021, one or more of the WCSO Defendants was acting as a deputized member of the U.S. Marshals' Fugitive Task Force.

23.     Defendants Dominic Diluigi and Justin McCloud (collectively, the "USM Defendants") are current or former deputies and employees of the United States Marshals

Service. On November 2, 2021, each of the USM Defendants named in this Complaint was acting as an employee or agent of the United States Marshals Service, an agency of the United States government.

24.     Each of the individual Defendants is sued in his or her individual capacity, and each acted under color of law and within the scope of his or her employment while engaging in the actions and omissions alleged in this Complaint.

25.     At all relevant times on November 2, 2021, all, or nearly all, of the JPD, WCSO, and USM Defendants (a) were wearing masks or helmets with visors that concealed, in whole or in part, their identities from Plaintiffs; (b) were not wearing any personally-identifying clothing (e.g., a jacket with their last name on it); (c) were not wearing a badge with their name on it; and (d) did not personally identify themselves to Plaintiffs.

<strong>PLAINTIFFS' FACTUAL ALLEGATIONS</strong>

<strong>228 South Comstock</strong>

26.     At all relevant times, including on and prior to November 2, 2021, Plaintiffs Adela J. Carrasco, J.F., L.O., S.O., Alexander G. Flores, Annabel Leija, Kiera T. Martinez, and Eric J. Raya lived at 228 South Comstock Street in Joliet, Illinois.

27.     At all relevant times, including on and prior to November 2, 2021, Plaintiffs Marianna C. Perez, Marleni Braccamontes, Benjamin M. Onate, J.C., I.F., and J.R. lived at 226 South Comstock Street in Joliet, Illinois.

28.     At all relevant times, including on and prior to November 2, 2021, the residence at 228 South Comstock (herafter the "228 residence") and the residence at 226 South Comstock (hereafter the "226 residence") were two completely separate residences that happened to be situated in the same physical building. The 228 residence was comprised of the building's entire

9

second floor and attic and could be accessed only *via* a front and rear entrance. Though the front and rear entry doors were located on the first floor, those entrances simply consisted of a stairway leading directly to the second floor. The 226 residence was comprised of the building's entire first floor and basement and could be accessed only *via* a front and rear entrances separate from those of 228. The 228 residence and the 226 residence were physically entirely separate; there was no way to go between the residences without exiting the front or rear entrance of one and entering the front or rear entrance of the other.

29.     At all relevant times, including on and prior to November 2, 2021, the fact that the 228 residence and the 226 residence were entirely separate residences—that is, the fact that the building at 226 and 228 South Comstock was a multi-unit building—was open and obvious to all from the outside. Each residence had its own separate front entrance. The wall next to the front door to the 228 residence was marked by a sign that read "228." The wall next to the front door to the 226 residence was marked by a sign that read "226." Each residence had its own separate doorbell. Each residence had its own separate mailbox, and the 228 mailbox was specifically labeled "228" while the 226 mailbox was specifically labeled "226." Each residence had its own separate rear entrance.

30.     At all relevant times, including on and prior to November 2, 2021, if any individual had any doubt as to whether the building that objectively appeared to be a multi-unit building with two completely separate residences was in fact a multi-unit building with two completely separate residences, any reasonable inquiry would have verified the fact that the building was in fact a multi-unit building with two completely separate residences. There were two separate gas meters located on the outside of the building providing separate service to each residence. The two residences were each billed separately for electricity.

10

31.     In other words, at all relevant times, including on and prior to November 2, 2021, it was impossible for any thinking person to rationally think that the 228 residence and the 226 residence were *not* entirely separate residences located in the same building.

**Warrant to Arrest a Resident of 226 South Comstock Street**

32.     On or about August 17, 2021, JPD Defendant Detective Raymond Jansma prepared and submitted an application for a warrant to arrest an individual named "Elian J. Raya" in connection with three weapons-related offenses. In his arrest warrant application, Defendant Jansma stated that "Elian J. Raya" was eighteen years old, was 5'8", weighed 170 pounds, and was last known to be living at "226 COMSTOCK ST" in Joliet, Illinois.

33.     On or about August 17, 2021, based on Defendant Jansma's written arrest warrant application and, on information and belief, Defendant Jansma's appearance in court, Will County Circuit Judge Fred Harvey signed and issued a warrant for the arrest of "Elian J. Raya." The arrest warrant stated that Elian J. Raya's last known address was "226 COMSTOCK ST., JOLIET, IL."

34.     For seventy-seven days, from August 17, 2021 to November 1, 2021, no attempt whatsoever was made to execute the warrant for the arrest of Elian J. Raya at 226 South Comstock Street.

35.     On information and belief, no attempt was made during that period because Defendant Jansma did not actually think that Elian J. Raya had committed the three weapons-related offenses listed in the arrest warrant, and had merely applied for the warrant to demonstrate that JPD had at least taken some action in response to a complaint from an individual known to be affiliated with a gang in which the gang affiliate claimed that Elian J. Raya had fired a gun at his vehicle in a drive-by-shooting, a claim for which there was no

physical evidence connecting Elian J. Raya to the bullet casings found on scene or to the drive-by car.

36.     On October 31, 2021, however, there was a shooting at a Halloween party in the backyard of a Joliet home in which two individuals fired into a crowd of 200 young adults, killing two and wounding over a dozen. On information and belief, with no other leads Jansma searched outstanding arrest warrants and saw the outstanding warrant to arrest Elian J. Raya. On information and belief, with no specific reason to suspect that Elian J. Raya had the motive or the means to commit the Halloween Party Shooting Jansma nevertheless contacted the Will County Sheriff's Office and asked that it execute the warrant to arrest Elian J. Raya at 226 S. Comstock, hoping that, in arresting Elian J. Raya, they might also be able to search and find evidence connecting Elian J. Raya to the Halloween Party Shooting.

37.     In the alternative, on information and belief and, in addition to the foregoing, Jansma knew that the older brother of Elian J. Raya—Eric J. Raya, who was believed to be a gang affiliate and who had two years earlier been acquitted of the arson murder of an alleged rival gang member's mother—lived next door in the 228 residence and, therefore, falsely told the Will County Sheriff's Office and/or Sgt. Paul Rojek that the building at 226 and 228 S. Comstock was a *single*-family home, hoping that the warrant would be executed at both residences and yield evidence connecting either Elian or Eric (or any other resident) to the Halloween Party Shooting.

38.     In the alternative, on information belief, Jansma thought that the Halloween Party shooting may have been connected to some drug-deal-gone-awry and was hoping that the WCSO would enter and secure both the 228 and 226 residences and find drug evidence in either or both homes.

39. On information and belief, Defendant Jansma had to resort to these means because he knew he had neither probable cause nor reasonable articulable suspicion to believe that Elian or Eric were in any way connected with the Halloween Party Shooting. Rather, he merely had a "hunch" that there might be a connection.

**Defendants Execute an Arrest Warrant on the Wrong Home**

40. On the early morning of November 2, 2021, at or about 6:25 a.m., the twenty-two Defendant Officers in this case—that is, the fifteen JPD Defendants, the five WCSO Defendants, and the two USM Defendants—gathered outside the two-family residential building at 226 and 228 South Comstock in preparation for executing the warrant to arrest Elian J. Raya at 226 South Comstock.

41. On information and belief, Defendant Officers then split into two groups: about fourteen Defendants remained in front of the building while about eight Defendants went around to the rear of the building. On information and belief, the group that remained in front of the building was comprised of about ten JPD Defendants, three WCSO Defendants, and one USM Defendant, while the group that went to the rear of the building was comprised of about five JPD Defendants, two WCSO Defendants, and one USM Defendant.

42. Inexplicably, rather than approach the front door with the "226" sign on the wall next to it, the group of Defendants in the front of the building approached the front door with the "228" sign on the wall next to it and proceeded to execute the arrest warrant at 228 South Comstock instead of 226 South Comstock. On information and belief, Defendants' erroneous decision was either intentional—they knew they were executing the arrest warrant at 228 instead of 226—or alternatively willful and wanton.

43.     Plaintiff Adela J. Carrasco was sleeping in her bedroom in the 228 residence when she was suddenly awakened by the booming sound of yelling and banging on her front door. She got out of bed and went to the top of the stairs leading to her front door, where she called out and asked who was at that door.

44.     Outside her front door, Defendants shouted that it was the U.S. Marshals and the Joliet Police Department and that they had a warrant for "Elliot Reyes." Nowhere on the arrest warrant for Elian J. Raya did the name "Elliot Reyes" appear.

## Defendants Forcibly Enter 228 South Comstock Without a Warrant, Consent, or Any Exigency

45.     At no time on November 2, 2021 did Defendants have a warrant to search 228 South Comstock Street or to arrest anyone living or present at 228 South Comstock.

46.     At no time on November 2, 2021 did any Defendant ask for or receive consent from any Plaintiff to enter or search 228 South Comstock.

47.     At no time on November 2, 2021 was there any actual, known, genuine exigency that required Defendants to enter and search 228 South Comstock Street without a warrant.

48.     Nevertheless, when Ms. Carrasco informed Defendants that she did not know an "Elliot Reyes" and that no "Elliot Reyes" lived in her home, Defendants shouted that they were going to break down Ms. Carrasco's door if it was not opened immediately.

49.     Because of Defendants' threat, Ms. Carrasco felt she had no choice but to open her door and shouted "Wait! Wait! I'm disabled and don't have my cane. I'm going to get down these stairs as fast as I can!" Though Ms. Carrasco needed her cane, she did not retrieve it for fear that Defendants were going to break down her door. Instead, she began struggling down the stairs.

14

50.     When Ms. Carrasco made it down to the bottom of the stairs and opened her front door, it was clear to all officers that Ms. Carrasco was an elderly, disabled, nonthreatening, compliant woman who posed no threat to officer safety. Nevertheless, the Defendants in front of the building pointed their loaded firearms—including multiple assault rifles—directly at Ms. Carrasco's body and face at point-blank range. Ms. Carrasco was immediately consumed by shock and fear as she stared into the firing ends of Defendants' firearms pointing directly at her.

51.     Defendants shouted at Ms. Carrasco to step aside, yelling that they needed to "go upstairs" to arrest "Elliot Reyes." Ms. Carrasco reiterated that there was no "Elliot Reyes" in her home. Ignoring Ms. Carrasco's second notice, Defendants asked Ms. Carrasco who else was upstairs. She responded, "My babies—my grandchildren—are upstairs."

52.     On information and belief, of the approximately fourteen Defendants in front of the building, two remained outside as the other twelve pushed Ms. Carrasco aside and streamed, in single-file fashion, into the 228 residence with guns still drawn and pointed directly ahead.

53.     Ms. Carrasco immediately began to cry uncontrollably, imagining all the ways her grandchildren might react to being awakened by Defendants' guns, and fearing Defendants might shoot one of them.

54.     By this time, Plaintiff Marianna C. Perez, who also was awakened by the loud banging sounds and Defendants' shouting at Ms. Carrasco, had come to the front door of the 226 residence. One of the two Defendants who had remained outside the front of the building rather than entering 228 with the other twelve Defendants instructed Ms. Perez to "STAY BACK!" because Defendants had an arrest warrant for a "fugitive who lived in 228."

**Defendants Needlessly Pointed Loaded Firearms at Nonthreatening, Nonresistant, Fully Compliant Adults and Children Inside 228 South Comstock**

55.     Inside 228 South Comstock, the twelve Defendants fanned out and cleared the entire residence. These Defendants had their firearms drawn and pointed directly ahead at all times inside 228 South Comstock.

56.     In groups of three, four or five, Defendants entered the bedroom in which 12-year-old J.F. and 14-year-old S.O. were sleeping, the bedroom in which 13-year-old L.O. was sleeping, the attic living room in which 19-year-old Alexander G. Flores and 20-year-old Annabel Leija were sleeping, and the attic bedroom in which 20-year-old Kiera T. Martinez and 23-year-old Eric J. Raya were sleeping. Upon entering each room, Defendants could immediately see that each Plaintiff was asleep, wearing only pajamas, was unarmed, and did not pose any threat to officer safety. Nevertheless, Defendants aggressively woke each Plaintiff and pointed their firearms directly at their bodies and faces, including the bodies and faces of 12-year-old J.F., 13-year-old L.O., and 14-year-old S.O., at point-blank range while shouting commands at them such as "DON'T MOVE MOTHER FUCKER!!! PUT YOUR FUCKING HANDS UP!!!"

57.     Plaintiffs were, at all times after being awakened, nonthreatening, unarmed, nonresistant, and fully compliant, and all Defendants could plainly see that. Nevertheless, as Defendants detained Plaintiffs and forcibly moved them out of their bedrooms, down the stairs, out of the 228 residence, and into the 226 residence, Defendants needlessly continued to hold Plaintiffs at gun point. Defendants' pointing of their firearms directly at Plaintiffs was not momentary but sustained.

**Rather Than Retreat from the 228 Residence, Defendants Detained and Questioned the Residents of 228 South Comstock Without Reason and Searched 228 South Comstock Without a Warrant, Consent, or Any Exigency**

58.     Defendants then proceeded to search 228 South Comstock without a warrant, consent, or any exigency. In multiple bedrooms, Defendants flipped mattresses and scoured through drawers, pulling clothing out. In the second floor living room, Defendants cut the lining of the cushions on the sofa and tore out the cushions themselves, among other things.

59.     Defendants also repeatedly questioned the Plaintiffs inside 228 South Comstock as to (a) whether any of them was Elian Raya, the target of the arrest warrant, (b) whether Elian Raya lived there and/or (c) whether they knew where Elian Raya was located. Within minutes of entering the 228 residence and seizing all Plaintiffs, it was obvious to Defendants that they were in the wrong residence, that the target of the arrest warrant did not live in the 228 residence, and that the target of the arrest warrant was not present in the 228 residence.

60.     At no time on November 2, 2021 did Defendants have any specific reason to think that any of the Plaintiffs who resided inside 228 South Comstock—Adela J. Carrasco, J.F., L.O., S.O., Alexander G. Flores, Annabel Leija, Kiera T. Martinez, or Eric J. Raya—had committed, were committing, or were about to commit a crime.

61.     But Defendants did not retreat or release the Plaintiffs who resided in 228 South Comstock. Instead, they detained and questioned them, initially inside 228 South Comstock and then inside 226 South Comstock.

**Defendants Needlessly Detained Plaintiffs Inside 226 South Comstock For Nearly Six Hours *After* Defendants had Executed the Arrest Warrant**

62.     At or around 6:45 a.m., while the twelve Defendants were inside 228 South Comstock, the eight Defendants who had gone to the rear of the building executed the arrest warrant at 226 South Comstock, initially entering the residence through the rear door.

63.     Upon entering the rear entrance to 226 South, one of these eight Defendants—on information and belief, Defendant Sgt. Paul Rojek—used a shield to needlessly and forcibly push

17

Plaintiff Marianna C. Perez into a wall inside the 226 residence while shouting verbal threats at her.

64.     Once the Defendants who entered the 226 residence indicated they were executing an arrest warrant for Elian J. Raya, Plaintiff Marianna C. Perez immediately led them to the basement where Elian's bedroom was located. Shortly thereafter, at or about 6:40 a.m., Defendants located and arrested Elian, escorted him out of 226 South Comstock, loaded him into a JPD vehicle, and transported him to the JPD station, where he was booked by 7:15 a.m.

65.     Even *after* Defendants had accomplished their purported purpose of arresting Elian, Defendants still did not release Plaintiffs but rather detained all of them them—both the 228 Plaintiffs and the 226 Plaintiffs—in the 226 living/dining room for six hours. At no time did any Defendant believe that any Plaintiff had committed or was about to commit any crime. Instead, Defendants claimed to have seen a gun lying on the floor next to Elian when they arrested him. There is no doubt the gun was there, but it is unclear how it got there, particularly given that subsequent testing found no fingerprints on it, let alone Elian's. Rather than simply seizing the gun, as authorized under the plain-view doctrine, Defendants told Plaintiffs they were being detained in order to allow Defendants time to get a warrant to search the entire home.

66.     But that's not what Defendants did. Instead of immediately seeking a search warrant, several Defendants transported Elian from 226 South Comstock to the Joliet Police station, where they booked and fingerprinted Elian and proceeded to interrogate him for over an hour, all as Plaintiffs sat imprisoned in the living room of 226 South Comstock under the constant watch of gun-wielding JPD officers who refused their every reasonable request (e.g., to get Ms. Carrasco's asthma inhaler from 228, to put on clothes, to use the bathroom, etc.). Only when Elian, in the interrogation room at the JPD station, invoked his Fifth Amendment right as a

U.S. citizen to speak with an attorney did Defendants, including Jansma, cease the interrogation and commence efforts to apply for and obtain a search warrant. With a search warrant finally in hand, Jansma returned to 226 South Comstock around 11:45 a.m., and JPD officers executed the warrant but found nothing.

67.     Plaintiffs were released from the 226 living/dining room around 1:00 p.m.

68.     During the more-than-six hours in which all Plaintiffs were imprisoned in the dining/living room of 226 South Comstock, Defendants refused all of Plaintiffs' repeated requests to return to their home inside 228 South Comstock. Defendants refused to allow the Plaintiffs who were wearing minimal clothing (having been awakened mid-sleep) to go put on clothes. Defendants kept both the front and rear entrances to the 226 residence locked throughout the entire detention and stood watch over Plaintiffs with a rotating group of police officers who wielded guns continuously.

**Defendants Conspired to Cover Up Their Misconduct**

69.     As alleged more fully above, all Defendants knew from the start that they entered the wrong residence, and those who didn't quickly realized their mistake. In fact, Plaintiffs heard multiple officers on scene telling one another, "This is bullshit. We should've never been here [referencing 228 South Comstock]. This is a family home with kids." They heard another Defendant yelling at a JPD Defendant for entering the wrong residence. But Defendants never admitted their mistake to plaintiffs. In fact, they took numerous overt acts to cover up their unlawful entry into and search of 228 South Comstock, including but in no way limited to some of the following acts and omissions.

70.     Defendants refused to furnish a copy of the arrest warrant to Plaintiffs, knowing that doing so would have revealed that they had no lawful basis to enter and search 228 South Comstock.

71.     Defendant JPD Detective Raymond Jansma completed a report dated 11/2/21 in which he falsely attempted to describe 226 South Comstock and 228 South Comstock as a single residence, repeatedly referring to the two separate units as "the residence."

72.     To lend credibility to his description of 226 and 228 South Comstock as a single residence, Defendant JPD Detective Raymond Jansma also falsely stated in a report: "I have on previous occasions been inside 226 and 228 Comstock Street reference prior investigations at the residence." But Jansma had never been inside either 226 or 228 South Comstock.

73.     In addition, Defendant JPD Detective Raymond Jansma completed a report dated 11/2/21 in which he attempted to cover up Defendants' forced entry into 228 South Comstock, writing that "[o]n 11/02/21 . . . officers approached 228 Comstock Street and knocked on the front door. [Plaintiff Adela J. Carrasco] . . . opened the door and *allowed the officers to walk inside the residence* to check the residence for Elian Raya. Elian Raya was not located inside 228 Comstock Street. The task force officers *then* [entered 226 South Comstock] . . . ." Jansma sought in his report to create the false impression that Ms. Carrasco and somehow voluntarily consented to Defendants' forced entry at gunpoint.

74.     In the same report, Defendant JPD Detective Raymond Jansma intentionally omitted the fact that Defendants commenced entering 226 South Comstock Street *while* Defendants were still looking for Elian J. Raya inside 228 South Comstock, knowing full well that the arrest warrant and all other available information indicated that Elian lived in 226 South Comstock and had never lived in 228 South Comstock.

20

75. In the same report, Defendant JPD Detective Raymond Jansma also intentionally omitted the fact that Defendants conducted a search of 228 South Comstock, including but not limited to flipping mattresses, searching clothing drawers, and cutting open couch cushions.

76. In another report dated 11/2/21, Defendant JPD Officer Marcus Wietting described Defendants' arrival on scene and their execution of the arrest warrant at 226 South Comstock but intentionally omitted *any* mention of the key facts that Defendants made a forcible, warrantless entry into 228 South Comstock, searched 228 South Comstock without a warrant, and detained all residents of 228 South Comstock inside 226 South Comstock for nearly *six hours*. These were not insignificant facts to omit from an official report.

77. In another report dated 11/2/21, Defendant JPD Officer Patrick Kelly wrote that he "photograph[ed] the utility room in its entirety, with the firearm in place," referencing the firearm JPD claimed to have seen upon arresting Elian. But in all of the photographs Kelly took the firearm is nowhere to be seen.

78. Because Plaintiffs observed that most Defendants on scene on November 2, 2021, were wearing body-worn cameras ("BWCs"), following the incident Plaintiffs submitted multiple requests under the Freedom of Information Act ("FOIA") seeking the BWC video footage. The nonindividual Defendants all denied all requests, claiming an investigation was ongoing.

79. A year later, long after the criminal investigation had concluded, Plaintiffs' counsel submitted numerous requests for the same BWC footage. The entity Defendants again denied all requests.

**Plaintiffs' Damages**

21

80.     As a direct and proximate result of Defendants' actions, omissions, and conduct described above, Plaintiffs have suffered and continue to suffer severe psychological and emotional injuries.

81.     Plaintiffs continue to experience psychological pain and suffering, fear, anxiety, depression, rage, and other physical and psychological effects from Defendants' misconduct. Being awakened by Defendants pointing rifles directly in their faces at point blank range traumatized Plaintiffs, especially the children. They can still hear the sound of Defendants shouting at them to "PUT YOUR FUCKING HANDS UP!" and calling them "MOTHER FUCKERS!" as they forced them, at gun point, out of bed and out of their bedrooms even though they had done nothing wrong, were nonthreatening, and were at all times fully compliant. Plaintiffs still have nightmares about the terror of their near-six-hour detention inside 226 South Comstock. They still remember returning to 228 to find their couch cushions gutted, the interiors removed, and other damage to their home.

82.     The severe psychological and emotional distress that Plaintiffs have suffered has affected them in their everyday lives in myriad ways. For the children, it has affected them in school. Ever since the incident, plaintiffs have continued to re-live, in various ways, how terrified they were that day. Plaintiffs continue to experience and exhibit, unabated, these and other signs of severe emotional and psychological trauma and distress.

83.     On information and belief, one or more Plaintiffs have Post-Traumatic Stress Disorder as the result of Defendants' misconduct.

## COUNT I
### 42 U.S.C. § 1983 – Unlawful Entry and Search

84.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

85.     This Count is brought by Plaintiffs Adela J. Carrasco, J.F., L.O., S.O., Alexander G. Flores, Annabel Leija, Kiera T. Martinez, and Eric J. Raya against each individual Defendant who forcibly entered and/or searched 228 South Comstock on November 2, 2021 without a warrant, consent, exigent circumstances or any other lawful justification.

86.     This count also is brought by Plaintiffs Marianna C. Perez, Marleni Braccamontes, Benjamin M. Onate, J.C., I.F., and J.R. against each individual Defendant who exceeded the scope of the warrant to arrest Elian J. Raya when he or she searched Plaintiffs' drawers and other locations inside 226 South Comstock on November 2, 2021, even *after* Defendants had already arrested, removed from the residence, and transported to JPD station Elian J. Raya, when Defendants had no warrant, consent, exigent circumstances, or other legal justification for conducting said search.

87.     This count also is brought against the Defendants who knowingly and explicitly sanctioned the unlawful etry and search of 228 South Comstock—specifically, on information and belief, JPD Defendants Landeros, Jansma, Stygar, and Moore as well as WCSO Defendants Rojek and Wittmayer.

88.     As described more fully above, Defendants' conduct deprived Plaintiffs of their right to be free from unreasonable searches inside the privacy of their own home, in violation of the Fourth and Fourteenth Amendments. The individual Defendants knowingly and intentionally entered 228 South Comstock despite the fact that the arrest warrant they were executing authorized them to enter only 226 South Comstock. Alternatively, Defendants recklessly executed the arrest warrant for 226 South Comstock on the wrong home, 228 South Comstock, by treating the building as a single-family home even though it was obvious to any reasonable officer that the building was a multi-unit building, as alleged more fully above.

89.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

90.     As a direct and proximate result of this deprivation of their constitutional right to be free from unreasonable searches, Plaintiffs suffered injuries, including but not limited to severe psychological pain and suffering and emotional distress, as more fully alleged above.

## COUNT II
### 42 U.S.C. § 1983 – Excessive Force

91.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.All Plaintiffs bring this Count against each individual Defendant who needlessly pointed his or her firearm at a Plaintiff inside 228 or 226 South Comstock when it was objectively unreasonable to do so under the circumstances, including because Plaintiffs were at all times visibly unarmed, nonthreatening, nonresistant, and fully compliant and because Defendants trained their firearms on Plaintiffs at such close range and for so long a duration, as alleged more fully above. Plaintiffs also assert this count against the Defendant who, upon entering 226 South Comstock, used his shield to needlessly and forcibly push Plaintiff Marianna C. Perez against and into a wall.

92.     As described more fully above, Defendants' conduct deprived Plaintiffs of their right to be free from unreasonable seizures effectuated by excessive force, in violation of the Fourth and Fourteenth Amendments.

93.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

94.     As a direct and proximate result of this deprivation of their constitutional right to be free from unreasonable seizures, Plaintiffs suffered injuries, including but not limited to psychological pain and suffering and severe emotional distress, as more fully alleged above.

## COUNT III
## 42 U.S.C. § 1983 – Unlawful Seizure / False Arrest

95.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

96.     Plaintiffs Adela J. Carrasco, J.F., L.O., S.O., Alexander G. Flores, Annabel Leija, Kiera T. Martinez, and Eric J. Raya bring this Count against each individual Defendant who unreasonably detained and questioned them inside 228 South Comstock without reasonable articulable suspicion to believe they had committed or were about to commit any crime and/or who falsely arrested them without probable cause inside 226 South Comstock for more than six hours *after* Defendants had successfully effectuated the arrest of the subject of the arrest warrant, as alleged more fully above.

97.     In addition, Plaintiffs Marianna C. Perez, Marleni Braccamontes, Benjamin M. Onate, J.C., I.F., and J.R. bring this Count against each individual Defendant who falsely arrested them without probable cause inside their own home, 226 South Comstock, for more than six hours *after* Defendants had successfully effectuated the arrest of the subject of the arrest warrant, as alleged more fully above.

98.     In addition, this count is brought against the Defendants—on information and belief, JPD Defendants Landeros, Jansma, Stygar, and Moore and WCSO Defendants Rojek and Wittmayer—who sanctioned the prolonged unlawful seizure / false arrest of Plaintiffs inside 226 South Comstock.

99.     As described more fully above, Defendants' conduct deprived Plaintiffs of their right to be free from unreasonable seizures, in violation of the Fourth and Fourteenth Amendments.

100.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

101.     As a direct and proximate result of this deprivation of their constitutional right to be free from unreasonable searches, Plaintiffs suffered injuries, including, but not limited to, psychological pain and suffering and severe emotional distress, as more fully alleged above.

**COUNT IV**
**42 U.S.C. § 1983 – Conspiracy**

102.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

103.     All of the individual Defendants and other co-conspirators, known and not yet known to Plaintiff, reached an agreement amongst themselves to: enter and search 228 South Comstock without a warrant; search 228 South Comstock without a search warrant; use excessive force against all occupants of 228 and 226 South Comstock, including nonthreatening and nonresistant individuals such as Plaintiffs; unreasonably detain, question, and falsely arrest Plaintiffs for six hours even after Defendants accomplished their lawful purpose of arresting the target of the arrest warrant; and conceal their misconduct in official reports that they authored, all in violation of Plaintiffs' constitutional rights, as described above.

104.     In this manner, the individual Defendants, acting in concert with other known and unknown co-conspirators, conspired to accomplish an unlawful purpose by unlawful means or to accomplish a lawful purpose by unlawful means.  In addition, Defendants agreed among themselves to protect one another from liability for depriving Plaintiffs of their rights.

105.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity, as described above.

106.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

26

107.    As a direct and proximate result of the illicit agreement referenced above, Plaintiffs' rights were violated, and they suffered injuries, including but not limited to psychological pain and suffering and emotional distress, as more fully alleged above.

**COUNT V**
**42 U.S.C. § 1983 – Failure to Intervene**

108.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

109.    In the manner describe above, during the constitutional violations described herein, all of the individual Defendants stood by without intervening to take reasonable steps to prevent the violation of Plaintiffs' constitutional rights, despite having reasonable opportunities to do so.

110.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiffs' constitutional rights.

111.    As a direct and proximate result of this failure to intervene to prevent the violation of Plaintiffs' constitutional rights, Plaintiffs suffered injuries, including but not limited to psychological pain and suffering and emotional distress, as more fully alleged above.

**COUNT VI**
***Bivens* Claim**

112.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

113.    Because the United States Marshal Service has declined Plaintiffs' FOIA requests and failed to respond to an additional FOIA request which has been pending for 11 months, and because of Defendants' concealment of their identities on November 2, 2021, as alleged more fully above, it is not yet known to Plaintiffs what role Defendant U.S. Marshal Deputies Dominic Diluigi and Justin McCloud played in the misconduct described above (i.e., whether each forcibly entered and/or searched 228 South Comstock or waited outside the building; if they

entered 228 South Comstock, whether each needlessly pointed his firearm at, detained,

questioned, and/or falsely arrested the Plaintiffs who lived in 228 South Comstock; whether each

entered and searched 226 South Comstock; whether each needlessly pointed his firearm at

Plaintiffs inside 226 South Comstock; whether each participated in the four-hour false arrest of

all Plaintiffs inside the 226 residence; etc.).

114.    On information and belief, Defendants Diluigi and McCloud personally

participated in all of the misoncduct describe above.

115.    Consequently, to the extent that Defendant Diluigi and/or Defendant McCloud

committed any of the acts described above, Plaintiffs bring Counts I, II, III, IV, and V against

them pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of* Narcotics, 403 U.S.

388 (1971), and hereby incorporate each paragraph of Counts I, II, III, IV, and V as if fully

restated here.

116.    In addition, to the extent that one or more of the WCSO Defendants committed

any of the misconduct described above as deputized members of the U.S. Marshalls' Fugitive

Task Force, Plaintiffs bring Counts I, II, III, IV, and V against them pursuant to *Bivens v. Six*

*Unknown Named Agents of Federal Bureau of* Narcotics, 403 U.S. 388 (1971), and hereby

incorporate each paragraph of Counts I, II, III, IV, and V as if fully restated here.

**COUNT VIII**
**State Law Claim – Trespass / Failure-to-Retreat**

117.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

118.    This Count is brought by Plaintiffs J.F., L.O., and S.O. against each individual

Defendant who forcibly entered and/or searched 228 South Comstock on November 2, 2021

without lawful authorization to enter upon the premises and/or who, after realizing they lacked

lawful authorization to be present upon said premises, failed to immediately retreat, in violation of Plaintiffs' right to enjoy the exclusive possession of their home, as alleged more fully above.

119.    This count is also brought by Plaintiffs Benjamin M. Onate, J.C., I.F., and J.R. against each individual Defendant who, *after* arresting, removing from 226 South Comstock, and transporting to the JPD station Elian J. Raya, forcibly remained present inside 226 South Comstock without lawful authorization for more than six hours and/or who remained present on said premises even after realizing they lacked lawful authorization to be present on said premises, in violation of Plaintiffs' right to enjoy the exclusive possession of their home, as alleged more fully above.

120.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

121.    As a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered and continue to suffer injuries, including but not limited to psychological pain and suffering and severe emotional distress, as more fully alleged above.

## COUNT VIII
### State Law Claim – Assault

122.    Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

123.    Defendants' misconduct, described more fully above, including but not limited to, pointing loaded firearms at Plaintiffs while simultaneously shouting commands at them in an aggressive and threatening manner when Plaintiffs were fully compliant and posed no threat to officer safety, was undertaken without lawful authorization and with the intent to inflict imminent bodily harm on Plaintiffs or to cause Plaintiffs to reasonably fear the infliction of such imminent bodily harm.

124.     Plaintiffs reasonably believed that Defendants had the ability to cause such bodily harm, and Defendants' conduct in fact caused Plaintiffs to reasonably fear the imminent infliction of such bodily harm.

125.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights and safety.

126.     As a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered and continue to suffer injuries, including but not limited to psychological pain and suffering and severe emotional distress, as more fully alleged above.

## COUNT IX
## State Law Claim – Battery

127.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

128.     Defendants' actions, described more fully above, including but not limited to touching Plaintiffs when they forcibly seized Plaintiffs, physically grabbed certain Plaintiffs, handcuffed Plaintiff Alexander G. Flores, and herded all Plaintiffs into the living/dining room of 226 South Comstock while simultaneously shouting commands at them in an aggressive and threatening manner when they were fully compliant, constituted harmful and offensive contacts with Plaintiffs that were undertaken without lawful authorization and with the intent to inflict such harmful or offensive contacts on Plaintiffs.

129.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiffs' rights, safety, and dignity.

130.     As a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered and continue to suffer injuries, including but not limited to psychological pain and suffering and severe emotional distress, as more fully alleged above.

## COUNT X

30

**State Law Claim – Intentional Infliction of Emotional Distress**

131.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

132.     The actions, omissions, and conduct of the individual Defendants as set forth above, especially as directed to the children, were extreme and outrageous and utterly intolerable in a civil society. Their actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that they would cause, severe emotional distress to Plaintiffs, as more fully alleged above.

133.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiffs' rights.

134.     As a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered and continue to suffer severe emotional distress, as more fully alleged above.

**COUNT XI**
**State Law Claim – False Arrest**

135.     Plaintiffs incorporate each paragraph of this Complaint, including all paragraphs set forth in Count III, as if fully restated here.

136.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

137.     As a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered and continue to suffer injuries, including but not limited to psychological pain and suffering and severe emotional distress, as more fully alleged above.

**COUNT XII**
**State Law Claim – Civil Conspiracy**

138.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

139.     As described more fully in the preceding paragraphs, the individual Defendants, acting in concert with one another and other co-conspirators, known and unknown, conspired to accomplish an unlawful purpose by unlawful means or to achieve a lawful purpose by unlawful means. In addition, Defendants agreed among themselves to protect one another from liability for depriving Plaintiffs of their rights.

140.     In furtherance of their conspiracy, Defendants committed overt acts and were otherwise willing participants in joint activity.

141.     The violations of Illinois law described in this complaint—including, but not limited to, Defendants' trespass into Plaintiffs' home, Defendants' assault and battery of Plaintiffs, and Defendants' intentional infliction of emotional distress—were accomplished by Defendants' conspiracy.

142.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

143.     As a direct and proximate result of Defendants' misconduct described in this Count, Plaintiffs have suffered and continue to suffer injuries, including but not limited to psychological pain and suffering and emotional distress, as more fully alleged above.

### COUNT XIII
### State Law Claim – *Respondeat Superior*

144.     Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

145.     While committing the misconduct alleged in this Complaint, the individual Defendants were employees, agents, or members of the Joliet Police Department, an agency of the City of Joliet, the Will County Sheriff's Office, an agency of the County of Will, or the U.S. Marshals Service, an agency of the United States government, acting at all relevant times within the scope of said employment or agency.

146. Defendant City of Joliet is liable as principal for all torts committed by its employees and agents.

147. Defendant Will Count is liable as principal for all torts committed by its employees and agents.

**COUNT XIV**
**State Law Claim – Indemnification Pursuant to 745 ILCS 10/9-102**

148. Plaintiffs incorporate each paragraph of this Complaint as if fully restated here.

149. Illinois statute, 745 ILCS 10/9-102, provides that public entities are directed to pay any tort judgment for compensatory damages for which its employees are liable based on its employees' misconduct committed within the scope of their employment activities.

150. At all relevant times, the above-identified JPD Defendants were employees, agents, and/or members of the Joliet Police Department, an agency of the City of Joliet, acting within the scope of their employment when committing the misconduct described herein.

151. At all relevant times, the above-identified WCSO Defendants were employees, agents, and/or members of the Will County Sheriff's Office, an agency of the County of Will, acting within the scope of their employment when committing the misconduct described herein.

152. The City of Joliet is responsible to pay any judgment entered against the above-identified JPD Defendants.

153. The County of Will is responsible to pay any judgment entered against the above-identified WCSO Defendants.

154. Plaintiffs therefore demand judgment against Defendants City of Joliet and County of Will in the amounts awarded to Plaintiffs against the JPD Defendants and the WCSO Defendants, respectively, as damages, attorneys' fees, costs, and interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ADELA J. CARRASCO, ERIC J. RAYA, KIERA T. MARTINEZ, ALEXANDER G. FLORES, ANNABEL LEIJA, BENJAMIN M. ONATE, MARIANNA C. PEREZ, individually and as representative of minors S.O., L.O., J.F., J.C., and I.F., and MARLENI BRACCAMONTES, individually and as representative of J.R., respectfully request that this Court enter a judgment in their favor and against Defendants A. ADAMS, LAWRENCE BROOKS, MICHAEL CAGLE, FLOR DEL RIO, PHILIP EMPH, MICHAEL GEORGANTAS, RAYMOND JANSMA, PATRICK KELLY, TIZOC LANDEROS, BRADLEY MCKEON, MOORE, RACHEL SMITHBERG, RICHARD STYGAR, MARCUS WIETTING, the CITY OF JOLIET, Illinois, STEVEN ADENT, RUSS BURROUGHS, MICHAEL JANOVYAK, PAUL ROJEK, TODD WITTMAYER, the COUNTY OF WILL, Illinois, DOMINIC DILUIGI, JUSTIN MCCLOUD and the U.S. MARSHALS SERVICE, awarding compensatory damages, punitive damages against each of the individual Defendants, reasonable attorneys' fees and costs, and any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiffs ADELA J. CARRASCO, ERIC J. RAYA, KIERA T. MARTINEZ, ALEXANDER G. FLORES, ANNABEL LEIJA, BENJAMIN M. ONATE, MARIANNA C. PEREZ, individually and as representative of minors S.O., L.O., J.F., J.C., and I.F., and MARLENI BRACCAMONTES, individually and as representative of J.R., demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**ADELA J. CARRASCO, ERIC J. RAYA, KIERA T. MARTINEZ, ALEXANDER G. FLORES, ANNABEL LEIJA, BENJAMIN M. ONATE, MARIANNA C. PEREZ (for herself**

**and minors S.O., L.O., J.F., J.C., and I.F.), and MARLENI BRACCAMONTES (for herself and minor J.R.)**

BY:     /s/ Al Hofeld, Jr.

_____

*One of Plaintiffs' Attorneys*

Al Hofeld, Jr.
Zachary J. Hofeld
LAW OFFICES OF AL HOFELD, JR., LLC
53 W. Jackson Blvd., Suite 432
Chicago, Illinois 60604
al@alhofeldlaw.com
zach@alhofeldlaw.com